Susan PENA, Petitioner,

v.

INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO, Family Dollar Stores, Inc., and Travelers Insurance Company, Respondents.

No. 03CA0387.

Colorado Court of Appeals, Div. II.

Nov. 18, 2004.

As Modified on Denial of Rehearing May 26, 2005.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, Colorado; Bendinelli Law Office, P.C., Marc F. Bendinelli, Denver, Colorado, for Petitioner.

Ken Salazar, Attorney General, John D. Baird, First Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Thomas, Pollart & Miller, LLC, Douglas A. Thomas, Greenwood Village, Colorado, for Respondents Family Dollar Stores, Inc. and Travelers Insurance Company.

CARPARELLI, J.

Claimant, Susan Pena, appeals the final order of the Industrial Claim Appeals Office (Panel) reversing the general penalty awarded by the administrative law judge (ALJ) against Family Dollar Stores, Inc., and its insurer, Travelers Insurance Company (collectively, insurer). We set aside the final order of the Panel and remand for reinstatement of the general penalty imposed by the ALJ.

Claimant sustained a compensable ankle injury in 1999. In 2000, the treating physician restricted claimant, who does not drive, from using public transportation to travel to treatment appointments. Insurer filed a general admission of liability for medical and temporary total disability benefits and, consistent with a request from the treating physician, began providing taxi vouchers so claimant could travel to her appointments.

In late 2001, the treating physician wrote a letter stating that claimant continued to need taxi vouchers for essential transportation to medical and physical therapy appointments. Claimant's counsel forwarded the letter to the claims adjuster and requested more vouchers. The claims adjuster requested

medical documentation of the continuing need for and medical necessity of vouchers. After receiving correspondence from claimant's counsel stating that claimant was in a wheelchair that insurer had provided, the claims adjuster refused to send additional vouchers.

Claimant applied for a hearing regarding medical benefits and penalties for insurer's denial of care prescribed by the treating physicians.

The ALJ found that insurer's refusal to provide taxi vouchers or any alternative means to enable claimant to attend medical appointments was unreasonable. The ALJ concluded that the failure to provide such transportation was a willful refusal to provide medical treatment and, citing § 8–43–304(1), C.R.S.2004, imposed penalties of $100 per day.

The Panel set aside the award of penalties based on its conclusion that the general penalties under § 8–43–304(1) may not be imposed for insurer's failure to provide the vouchers because § 8–43–401(2)(a), C.R.S. 2004, specifically provides a penalty for that conduct. Like the ALJ, the Panel found that claimant failed to prove entitlement to the penalty under the latter provision.

Although we agree with the Panel's conclusion that general penalties under § 8–43–304(1) may only be imposed for violations of the Act when no penalty has been specifically provided, we conclude that § 8–43–401(2)(a) does not specifically provide a penalty for insurer's willful refusal to provide treatment. Thus, we conclude that the general penalty imposed by the ALJ was proper.

## I.  *Section 8–43–304(1)*

■ Claimant contends that the Panel misconstrued § 8–43–304(1) when it concluded that general penalties under this section may not be imposed for acts and omissions contrary to the Act when a penalty has been specifically provided. We perceive no error.

### A.  *Statutory Interpretation*

■ The Panel's interpretation of the Act is a question of law, which we review de novo.  *People v. Witek,*  97 P.3d 240 (Colo. App.2004).

■ When interpreting statutes, we apply the familiar rules of construction and must determine and give effect to the intent of the General Assembly.  *Dworkin, Chambers & Williams, P.C. v. Provo,*  81 P.3d 1053 (Colo.2003);  *Jones v. Indus. Claim Appeals Office,*  87 P.3d 259 (Colo.App.2004).  We construe the statute as a whole, in an effort to give consistent, harmonious, and sensible effect to all its parts.  *Davison v. Indus. Claim Appeals Office,*  84 P.3d 1023 (Colo.2004). We read words and phrases in context and construe them according to the rules of grammar and common usage.  Section 2–4–101, C.R.S.2004;  *Bralish v. Indus. Claim Appeals Office,*  81 P.3d 1091 (Colo.App.2003). We do not depart from the plain meaning of statutory provisions unless it leads to an absurd result.  *Peregoy v. Indus. Claim Appeals Office,*  87 P.3d 261 (Colo.App.2004).

When a statute is fairly susceptible of more than one interpretation, it is ambiguous, and we may look to the object the General Assembly sought to attain, the circumstances under which the statute was enacted, legislative history, common law, former statutory provisions, laws on the same or similar subjects, the consequences of a particular construction, the administrative construction of the statute, and any legislative declaration of purpose.  Section 2–4–203, C.R.S.2004;  *see Midboe v. Indus. Claim Appeals Office,*  88 P.3d 643 (Colo.App.2003). Here, we note that there is no pertinent legislative history for § 8–43–304(1).  *Dworkin, Chambers & Williams, P.C. v. Provo, supra.*

### B.  *The Limiting Clause*

As relevant here, § 8–43–304(1) authorizes the imposition of penalties of up to $500 per day on

[a]ny employer or insurer, or any officer or agent of either, or any employee, or any other person who violates any provision of articles 40 to 47 of this title, or does any act prohibited thereby, or fails or refuses to perform any duty lawfully enjoined within the time prescribed by the director or panel,  *for which no penalty has been*

*specifically provided,* or fails, neglects, or refuses to obey any lawful order made by the director or panel.

(Emphasis added.)

### 1. *Four Categories*

This provision plainly identifies four categories of conduct and authorizes the imposition of the described penalties when an employer or insurer: (1) violates any provision of the Act; (2) does any act prohibited by the Act; (3) fails or refuses to perform any duty lawfully mandated within the time prescribed by the director or the Panel; or (4) fails, neglects, or refuses to obey any lawful order of the director or the Panel. *See Holliday v. Bestop, Inc.,* 23 P.3d 700, 706 n. 4 (Colo.2001)("enjoined" means "mandated"); *Giddings v. Indus. Claim Appeals Office,* 39 P.3d 1211 (Colo.App.2001)("order" has been broadly defined to encompass virtually every type of affirmative mandate or prescription that can be issued).

However, the description of the third category is followed by the clause, "for which no penalty has been specifically provided" (the limiting clause), and claimant contends that the Panel erred when it concluded that this clause applies to conduct contrary to the Act under the first and second categories. We disagree.

The supreme court has determined that the limiting clause applies to the failure or refusal to perform a duty lawfully enjoined within the time prescribed by the director or the Panel (the third category), but not to the failure, neglect, or refusal to obey a lawful order of the director or the Panel (the fourth category). *Holliday v. Bestop, Inc., supra;* see also *Giddings v. Indus. Claim Appeals Office, supra.* Colorado courts have not resolved the question of whether the limiting clause also applies to the first two categories, namely, other acts and omissions that are contrary to the Act. *Holliday v. Bestop, Inc., supra,* 23 P.3d at 707 n. 6.

### 2. *Grammar, Punctuation, and Common Usage*

Claimant contends that the repeated use of the word "or" signals the General Assembly's intention to create four distinct categories. We are not persuaded.

In *Bloomer v. Board of County Commissioners,* 799 P.2d 942 (Colo.1990), *overruled by Bertrand v. Board of County Commissioners,* 872 P.2d 223 (Colo.1994), the supreme court concluded that the General Assembly's repeated use of the disjunctive "or" in a series of conditions demarcated separate categories. There, as here, the categories were separated by commas and were not numbered.

Here, the limiting clause itself is set off from the third category by commas and does not create a category. Instead, it modifies one or more categories that precede it. And the relative proximity of the limiting clause to the immediately preceding language does not create a presumption of statutory intent. Section 2–4–214, C.R.S.2004; *People v. Lawrence,* 55 P.3d 155 (Colo.App.2001), *abrogated by Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *see also Subsequent Injury Fund v. State Comp. Ins. Auth.,* 793 P.2d 580 (Colo.1990); *Colonial Bank v. Colo. Fin. Servs. Bd.,* 961 P.2d 579 (Colo.App.1998).

Thus, the rules of grammar, punctuation, and common usage do not provide a clear understanding of the General Assembly's intention. Accordingly, we conclude the provision is ambiguous and consider the object the General Assembly sought to attain, the consequences of the alternative constructions, and the Panel's interpretation.

### 3. *The Object of the Limiting Clause*

Claimant contends that the only object of the limiting clause is to prohibit imposition of the general penalty with regard to the third category, failures and refusals to perform duties lawfully enjoined within the time prescribed by the director or the Panel. We disagree.

Section 8–43–218, C.R.S.2004, establishes the authority of the director. Subsection (3) of that statute states that any party who willfully refuses to comply with the claims management efforts of the division is subject to the penalty provisions set forth in § 8–43–304, C.R.S.2004.

Section 8–47–107, C.R.S.2004, grants the director power to adopt reasonable rules and regulations to administer the Act, but it does not give the director, the ALJ, or the Panel the power to create penalties or to impose penalties not authorized in the Act. Accordingly, the Workers' Compensation Rules of Procedure provide that, when a party violates a rule, the director, the ALJ, or the Panel may impose monetary penalties pursuant to § 8–43–304(1), as well as "penalties otherwise authorized by the Act." Dep't of Labor & Employment Rule XI(G), 7 Code Colo. Regs. 1101–3. Thus, whenever an employer or insurer fails or refuses to perform a duty lawfully enjoined by the director or the Panel, the penalty for such noncompliance is provided in the Act.

When the General Assembly provides a penalty for an act or omission, that conduct is, thereby, contrary to the Act. Consequently, whenever an employer or insurer is subject to a penalty for failing or refusing to perform a duty lawfully enjoined within the time prescribed by the director or the Panel, its conduct necessarily violates the Act and, thus, also falls within the first category. Therefore, we reject claimant's contention that the limiting clause does not apply to the first two categories.

Construing the Act as a whole, giving consistent, harmonious, and sensible effect to all its parts, considering the consequences of alternative constructions, and considering the Panel's interpretation, we conclude that, because all conduct that the director or the Panel may lawfully enjoin also constitutes conduct contrary to the Act, the limiting clause in § 8–43–304(1) applies to acts and omissions that are contrary to articles 40 through 47 of the Act. Thus, the Panel did not err in so interpreting the statute.

## II.  *Section 8–43–401(2)(a)*

▮▮▮  Although we agree with the Panel's interpretation of § 8–43–304(1), we conclude the Panel erred here when it set aside the general penalty the ALJ imposed against insurer for failure to provide treatment.

The Panel set aside the general penalty based on insurer's argument that the general penalty could not be imposed because § 8–

43–401(2)(a) "specifically addresses penalties for 'failing to timely provide medical care and treatment.'" The Panel agreed, stating that § 8–43–401(2)(a) "plainly establishes a penalty for willful stoppage of medical benefits" and, thus, specifically provides a penalty for insurer's refusal to provide taxi vouchers to claimant. We conclude otherwise.

### A.  *Standard of Review*

▮▮▮  When an ALJ's findings of fact are supported by substantial evidence, we are bound by them. Section 8–43–308, C.R.S. 2004. We give deference to the Panel's interpretation of workers' compensation statutes and will set that interpretation aside only if it is inconsistent with the clear language of the statute or the legislative intent. *Jones v. Indus. Claim Appeals Office, supra,* 87 P.3d at 260; *see Midboe v. Indus. Claim Appeals Office, supra.* However, courts are not bound by an agency's decision that misconstrues or misapplies the law. *Colo. Div. of Employment & Training v. Parkview Episcopal Hosp.,* 725 P.2d 787 (Colo.1986); *ABC Disposal Servs. v. Fortier,* 809 P.2d 1071 (Colo.App.1990).

### B.  *ALJ's Findings of Fact*

Here, the evidence showed that the claims adjuster received a letter from the treating physician stating that claimant needed taxi vouchers for transportation secondary to reconstruction of her lower extremity and that transportation was essential to claimant's ability to arrive at medical and therapy appointments. The claims adjuster requested documentation addressing the "medical necessity" of the vouchers.

The ALJ found, as matters of fact, that the claims adjuster received documentation from claimant's counsel and treating physician that explained that claimant had had surgery and was using a wheelchair, CAM Walker, and crutches. The ALJ also found that the claim adjuster received documentation that claimant (1) had recently had injections and was frustrated by the lack of progress and pain in the lower extremity; (2) was continuing to have problems with her ankle and had to use a walker; and (3) was not able to drive

because of immobilization of her ankle in a walker and regional pain syndrome. The ALJ further found that claimant's inability to receive physical therapy because she lacked transportation severely compromised her ability to improve and that the claims adjuster was aware of this.

Based on these facts, the ALJ concluded that taxi vouchers were "reasonable and necessary medical benefits" and that insurer "willfully and unreasonably failed or refused to provide transportation to and from medical treatment from December 6, 2001, until the day of the hearing, March 26, 2002." The ALJ concluded that insurer had thus violated the Act by failing to provide timely medical care and treatment and, citing § 8–43–304(1), imposed penalties of $100 per day.

However, finding that claimant did not submit evidence of medical bills that were not timely paid, the ALJ denied claimant's request for penalties under § 8–43–401(2)(a) for failure to pay benefits timely.

### C. Penalty for Delaying or Stopping Payment of Medical Benefits

▆ When an insurer has executed a general admission of liability and an "authorized treating physician refers a claimant to another health care provider, the treatment rendered by the referred provider is compensable as part of the legal chain of authorization." *Mason Jar Rest. v. Indus. Claim Appeals Office,* 862 P.2d 1026, 1029 (Colo. App.1993); *see Greager v. Indus. Comm'n,* 701 P.2d 168 (Colo.App.1985).

When prior authorization is required and requested, an insurer who contests the request as unnecessary must comply with Department of Labor and Employment Rule XVI(J). Dep't of Labor & Employment Rules XVI(I), (J), 7 Code Colo. Regs. 1101-3. When prior authorization is not required, an insurer may not dictate the type or duration of medical treatment. Section 8-43-503(3), C.R.S. 2004. Here, there was no requirement for prior authorization and the insurer did not treat physician's request as one for prior authorization by contesting it in accordance with rules that apply to prior authorizations. *See* Dep't of Labor & Employment Rules XVI (I), (J).

In this context we address § 8–43–401(2)(a), which states:

> After all appeals have been exhausted or in cases where there have been no appeals, all insurers and self-insured employers shall pay benefits within thirty days of when any benefits are due. If any insurer or self-insured employer willfully delays payment of medical benefits for more than thirty days or willfully stops payments such insurer or self-insured employer shall pay a penalty to the division of eight percent of the amount of wrongfully withheld benefits. If any insurer or self-insured employer willfully withholds permanent partial disability benefits within thirty days of when due, the insurer or self-insured employer shall pay a penalty to the division of ten percent of the amount of such benefits due.

### D. Penalty for Refusal to Provide Treatment

In its petition to the Panel, insurer argued that in *Miller v. Industrial Claim Appeals Office,* 49 P.3d 334 (Colo.App.2001), a division of this court interpreted § 8–43–401(2)(a) to provide penalties against an insurer who willfully delays payment of medical benefits or delays treatment. It argued further that, "[b]ecause the Act contains a specific penalty for denying or delaying medical care, penalties pursuant to § 8–43–304(1) may be granted only when medical treatment or payment of medical benefits [is] delayed in contravention of a lawful *order* of an ALJ, the Director, or Panel." We conclude that insurer's reliance on *Miller* is misplaced and that § 8–43–401(2)(a) does not contain a specific penalty for denying or delaying medical treatment prescribed by an authorized treating physician.

### 1. The Miller Case

We first conclude that the holding in *Miller* does not resolve the question of whether § 8–43–401(2)(a) specifically provides a penalty when an insurer refuses to provide transportation, and, thus willfully refuses to provide medical treatment, after the insurer has made a general admission of liability and

has not requested a medical utilization review (MUR).

In *Miller,* an ALJ awarded future medical benefits as provided for in *Grover v. Industrial Commission,* 759 P.2d 705 (Colo.1988). After the insurer requested a MUR and a majority of the MUR panel concluded that the physician's treatment was not related to the injury, the insurer notified the claimant that it would not authorize or pay for further treatment. The ALJ concluded that the treatment was reasonable and necessary to maintain the claimant's condition attributable to the injury and that the insurer knew or should have known that its conduct was unreasonable. The ALJ imposed a penalty "of eight percent of the amount of wrongfully withheld benefits." The Panel overturned the penalty, finding, as a matter of law, that the insurer's conduct was not "wrongful."

On appeal, the claimant argued that the Panel erred because it was bound by the ALJ's findings of fact and the Panel's determination was not a conclusion of law, but a finding of fact. The *Miller* division agreed, concluding that the ALJ's finding of unreasonableness was supported by the evidence and, consequently, that the Panel erred when it overturned that finding as a matter of law. It set aside the Panel's order and held that the Panel was required to defer to the ALJ's credibility determinations and resolution of conflicts in the evidence.

Unlike the ALJ in *Miller* here the ALJ imposed a penalty under § 8-43-304(1), not § 8-43-401(2)(a). The Panel reversed that penalty in response to insurer's contention that the ALJ erred because § 8-43-401(2)(a) specifically provides a penalty. Hence, here, we address an issue that did not arise and was not resolved in *Miller.*

### 2. *No Penalty Specifically Provided for Failure to Provide Treatment*

Here, the ALJ found that the treating physician determined that claimant continued to need taxi vouchers for essential transportation to medical and physical therapy appointments, that the insurer received the physician's letter and medical documentation supporting the necessity of the vouchers to travel to such appointments, that it was un-reasonable and possibly unsafe for claimant to drive to the appointments, that insurer's refusal to provide the vouchers to enable claimant to attend medical appointments was unreasonable, and that insurer thereby willfully refused to provide medical treatment. She declined to impose a § 8–43–401(2)(a) penalty for failing to timely pay benefits because claimant did not submit unpaid medical bills. However, she imposed a § 8–43–304(1) penalty stating it was for insurer's failure to provide medical care and treatment.

We conclude that § 8–43–401(2)(a) does not specifically provide a penalty under the facts of this case. The statute provides a penalty when a bill has been submitted to an insurer and the insurer "willfully delays payment of medical benefits for more than thirty days or willfully stops payments." Here, the treating physician determined that claimant needed vouchers because she was medically unable to drive or use other public transportation to go to medically necessary appointments, insurer questioned whether that was so, prior authorization was not required, insurer ignored the physician's determination without initiating a review under department rules, and, as a result, claimant was unable to obtain prescribed medical treatment. It is not a situation in which the claimant received treatment, the provider submitted a bill for the treatment, payment was due, and the insurer delayed payment of that medical benefit for more than thirty days after the due date or stopped payment. *See* Dep't of Labor & Employment Rule XVI(K), "Payment of Medical Benefits."

Thus, we conclude that the Panel erred when it concluded that §8-43-401(2)(a) specifically provides a penalty for insurer's action and, consequently, reversed the penalty that had been imposed under § 8-43-304(1).

The order of the Panel is set aside, and the case is remanded for reinstatement of the penalty imposed by the ALJ.

Judge CASEBOLT and Judge METZGER concur.